AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNDER SEAL  UNITED STATES DISTRICT COURT
### for the
### Eastern District of Virginia

OCT 2 5

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

INFORMATION ASSOCIATED WITH STACKBOYANT
THAT IS STORED AT PREMISES CONTROLLED BY
SNAPCHAT

) ) ) ) )

Case No.  1:17sw 718

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A.

located in the _____ Central _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 846 | Conspiracy to distribute controlled substances |
| 18 U.S.C. § 924(c) | Use and carry of a firearm during and in relation to a drug trafficking crime |
| 18 U.S.C. § 922(g)(3) | Possession of a firearm by a prohibited person |

The application is based on these facts:
See attached Affidavit.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Michael A. Fernald, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   10/25/2017

City and state:  Alexandria, Virginia

_____/s/_____ JFA
John F. Anderson
United States Magistrate Judge
*Judge's signature*

The Hon. John F. Anderson, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A

## Place to Be Searched

This warrant applies to information associated with Snapchat user account "stackboyant" that is stored at premises owned, maintained, controlled, or operated by Snap Inc., a company headquartered at Snap Inc. Custodian of Records, 64 Market Street, Venice, California 90291.

**ATTACHMENT B**

**Particular Things to Be Seized**

I.     **Information to Be Disclosed by Snap Inc. (hereinafter the "Provider")**

1.     To the extent that information associated with Snapchat user account **"stackboyant"** (hereinafter the "Accounts") is within the possession, custody, or control of Provider, including any messages, records, files, logs, or information that have been deleted but are still available to the Provider or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on September 5, 2017, Provider is required to disclose the following information to the government from December 1, 2016 to the present:

a.     All records or information in the Accounts and maintained regarding the creation and use of the Accounts, including Basic Subscriber Information, Snapchat username, E-mail address, phone number, Snapchat Account Creation information, Timestamp and IP address logins and logouts, address books, contact lists, telephone numbers, Snaps, Stories, and Chats.

b.     The contents of all messages sent to and from the Accounts, including stored or preserved copies, drafts of messages, any deleted messages that are stored, the source and destination addresses associated with any messages, the date and time at which each message was sent, and the size and length of each message.

c.     All records or other information regarding the identification of the Accounts, to include full customer or subscriber name, customer or subscriber physical address, local and long distance connection records, telephone numbers, and other identifiers, records of session times and durations, the date on which the Accounts were created, the length of service, the IP address used to register the Accounts, log-in IP

addresses associated with session times and dates, account status, alternative email

addresses provided during registration, methods of connecting, log files, and means and

source of payment (including any credit or bank account number).

      d.     The types of service utilized.

      e.     All records pertaining to communications between Provider and any

person regarding the Accounts, including contacts with support services and records of

actions taken.

## II.    Information to Be Seized by the Government

    2.     All information described above in Section I that constitutes evidence of

violations of Title 18, United States Code, Section 924(c) (use and carry of a firearm during and

in relation to a drug trafficking crime), Title 18, United States Code, 922(g)(3) (habitual user in

possession of a firearm), Title 21, United States Code, Sections 841(a)(1) and 846 (conspiracy to

distribute and possess with the intent to distribute marijuana and other controlled substances)

pertaining to the following matters:

      a.     All records or information in the Accounts and maintained regarding the

creation and use of the Accounts, including Basic Subscriber Information, Snapchat

username, E-mail address, phone number, Snapchat Account Creation information,

Timestamp and IP address logins and logouts, address books, contact lists, telephone

numbers, Snaps, Stories, and Chats.

      b.     Messages, communications, records, and files associated with or attached

to email messages, and transactional data that constitutes evidence of, that may have been

18

used to facilitate, and that were capable of being used to commit or further violations of the above-reference code sections, and to create, access, or store evidence of such crimes.

c.      Information relating to who created, used, and communicated with the Accounts, including records about their identities and whereabouts.

d.      Information indicating how and when the Accounts were accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the account owner(s).

e.      Evidence indicating the Accounts owner's and user's state of mind as it relates to the crimes under investigation.

f.      All records, documents, invoices, or materials associated with the Accounts that concern accounts with an Internet service provider or a telephone service provider whose services may have been used in the commission of the above-reference code sections and crimes.

19

UNDER SEAL

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH **STACKBOYANT** THAT IS STORED AT PREMISES CONTROLLED BY SNAPCHAT | **UNDER SEAL**<br><br>Case No. 1:17sw 718 |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Michael A. Fernald, being first duly sworn, hereby depose and state as follows:

### Introduction and Agent Background

1.     I make this affidavit in support of an application for a search warrant for information associated with Snapchat handle (or user account) **stackboyant** ("Subject Account") stored at premises owned, maintained, controlled, or operated by Snap Inc ("Snapchat"), which operates a video messaging application by which users can take photos, record videos, add text and drawings, and send them to a controlled list of recipients. Snapchat is headquartered in Venice, Los Angeles, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A), to require Snapchat to disclose to the government records and other information in its possession, including the contents of communications, pertaining to the subscriber or customer associated with the Subject Account.

2.     I have been a Special Agent with ATF since 2014. I have experience investigating narcotics and firearms trafficking offenses. As an ATF Special Agent, I have investigated and assisted in the investigation of narcotics and firearms traffickers. I have

previously participated in a variety of investigations, which resulted in the arrest and conviction

of narcotics and firearms traffickers. I have also become familiar with the methods and

techniques associated with the distribution of narcotics and how drug trafficking organizations

work. During these investigations, I have analyzed phone and internet records and participated

in the search and seizure of social media accounts.

3. The facts in this affidavit come from my personal observations, my training and

experience and information obtained from other agents and witnesses. This affidavit is intended

to show merely that there is sufficient probable cause for the requested warrants and does not set

forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit,

there is probable cause to believe that violations of Title 18, United States Code, Section 924(c)

(use and carry of a firearm during and in relation to a drug trafficking crime), Title 18, United

States Code, Section 922(g)(3)(habitual drug user in possession of a firearm), and Title 21,

United States Code, Sections 841(a)(1) and 846 (conspiracy to distribute and possess with the

intent to distribute marijuana and other controlled substances), as described in Attachment B

have been committed by ANTHONY LOZADA ("LOZADA"). There is also probable cause to

search the Subject Account for information described in Attachment A for evidence of these

crimes and items to be seized listed in Attachment B hereto, of these offenses.

**Probable Cause**

A. Background on the Investigation

5. In July of 2016, ATF began investigating the activities of armed narcotics dealers

operating in and around Prince William County, Virginia, which is located within the Eastern

District of Virginia. ATF worked jointly with the Prince William County Police Department

2

("PWCPD"). To date, this investigation has resulted in the successful prosecution of a number of individuals for narcotics and firearms related offenses.

     B.     <u>Search of a Residence Located on Colonial Drive</u>

     6.     On October 5, 2017, the Honorable Theresa Carroll Buchanan authorized the search of a residence located on Colonial Drive in Woodbridge, Virginia. The Court authorized this search after law enforcement presented an affidavit establishing probable cause to believe that a co-conspirator ("Co-Conspirator 1") was involved in a conspiracy to distribute controlled substances and used and carried a firearm during and in relation to a drug trafficking crime, and that there was probable cause to believe evidence of Co-Conspirator 1's criminal activities would be located in the residence.

     7.     Law enforcement executed this search on October 6, 2017. During the search, law enforcement encountered Co-Conspirator 1's brother, ANTHONY LOZADA. Law enforcement had been investigating LOZADA for several months prior to the search of the residence, and had probable cause to believe that LOZADA was involved in a conspiracy to distribute marijuana and other controlled substances; possessed firearms in furtherance of a drug trafficking crime; and possessed firearms despite being a habitual user of marijuana. LOZADA is also known to aid and abet individuals in lying on ATF Firearms Transaction Records to obtain firearms on his behalf, in violation of 18 U.S.C. § 924(a)(1)(A).

     8.     During the execution of the search warrant, law enforcement observed LOZADA's property, including a red Puma book bag. Inside the bag, law enforcement seized LOZADA's Virginia identification card, approximately three (3) grams of marijuana, and three (3) suspected Percocet prescription pills from the same pocket. Law enforcement also seized $1,520 from the water bottle pocket on the side of the bag. In the main part of the bag, law

enforcement located an empty freezer bag that had been ripped open. The bag still had marijuana residue in it and a box of sandwich bags. In the agent's experience at the search, the empty bag was consistent with packaging for one-half (1/2) to one (1) pound of marijuana and the sandwich bags are common packaging for marijuana distribution.

9.      While the search took place, LOZADA was advised of his *Miranda* rights, which he waived and was interviewed. During the interview, LOZADA admitted he had Percocet (Schedule II) pills and marijuana inside his book bag. LOZADA denied knowing anything about the U.S. currency or the additional bags for packaging marijuana that were in the bag. LOZADA stated he does not have a prescription for the pills; however, he has used the pills approximately two times a week for the past six to eight months for his back pain.

10.     LOZADA denied ever owning a firearm, but stated he had been arrested when he was 16 years old for carrying a concealed firearm. LOZADA was challenged on his truthfulness and he again stated that he has not possessed a firearm since he was 16 years old.

11.     LOZADA denied selling narcotics, but stated he was a "heavy smoker" of marijuana. LOZADA reported he used two (2) to three (3) ounces of marijuana every couple of days. LOZADA further admitted that he and another individual ("Co-Conspirator 2") smoke marijuana together. LOZADA reported Co-Conspirator 2 works at Domino's and that her salary is used to purchase the marijuana they both smoke.

12.     LOZADA admitted he sold marijuana in the past and got in trouble for it, but denied currently selling marijuana. LOZADA reported he has only purchased marijuana in Washington, D.C. LOZADA later admitted he has also purchased marijuana in Virginia.

4

C.    Anthony Lozada's Distribution of Marijuana and THC

     a.    *Controlled Purchase of Marijuana from Anthony Lozada and*
         *Co-Conspirator 2*

13.    On January 24, 2017, a cooperating defendant ("CD-1"), at law enforcement direction, contacted LOZADA and ordered a quantity of marijuana. CD-1 was searched prior to the transaction and found to be free of any illegal contraband. Law enforcement used audio transmitting/recording equipment during the transaction. CD-1 is cooperating because he hopes that his cooperation will be considered at sentencing. CD-1 has not been promised immunity.

14.    Law enforcement followed CD-1 to the meeting location in Woodbridge, Virginia, within the Eastern District of Virginia. Upon CD-1's arrival, law enforcement observed LOZADA's Audi vehicle in the parking lot. When CD-1 entered the Audi vehicle, Co-Conspirator 2 was alone in the vehicle.

15.    Co-Conspirator 2 informed CD-1 that LOZADA was sick, so Co-Conspirator 2 was conducting the transaction on his behalf. CD-1 exchanged $230 in documented funds for approximately 34 grams of marijuana. CD-1 asked Co-Conspirator 2 if LOZADA had any Xanax pills for sale. Co-Conspirator 2 replied they were unsure but that they would ask LOZADA.

16.    The purchased marijuana was later field tested by law enforcement and was positive for marijuana.

     b.    *Cooperating Defendant 2's Statements During a Debrief on February 24,*
         *2017*

17.    On February 24, 2017, another cooperating defendant ("CD-2") participated in a proffer after pleading guilty to drug and firearm offenses in the Eastern District of Virginia.

5

CD-2 is cooperating with law enforcement because he hopes to receive a reduction in his sentence.

18.    CD-2 admitted to purchasing marijuana from LOZADA.  CD-2 also admitted to traveling with LOZADA to his source of supply of marijuana in Lorton, Virginia.  According to CD-2, LOZADA would purchase one to two pounds of high-grade marijuana at a time.

19.    CD-2 also admitted he received a black .40 caliber pistol with a green laser beam from LOZADA on his birthday, October 13, 2016.  CD-2 had the firearm for approximately three weeks before returning it to LOZADA.

20.    CD-2 admitted to purchasing prescription pills from LOZADA.

21.    CD-2 has observed LOZADA fire a rifle on multiple occasions on the backside of Barksdale Drive.  CD-2 also reported LOZADA posted pictures with the rifle on social media.

22.    CD-2 has been inside LOZADA's residence, where he observed two handguns and a rifle.

23.    Finally, CD-2 admitted he traveled with LOZADA and Co-Conspirator 2 to Washington, DC to pick up THC edibles, and that Co-Conspirator 2 had a firearm in their possession during this trip.

          *c.*    *Controlled Purchase of Marijuana from Anthony Lozada and*
                *Co-Conspirator 1*

24.    On March 16, 2017, CD-1, at law enforcement direction, contacted Co-Conspirator 1, who is the brother of LOZADA, and ordered a quantity of marijuana.  CD-1 was searched prior to the transaction and found to be free of any illegal contraband.  Law enforcement used audio transmitting/recording equipment during the transaction.

6

25.     Law enforcement followed CD-1 to the meeting location in Manassas, Virginia, within the Eastern District of Virginia. Upon their arrival, LOZADA and Co-Conspirator 1 were observed in LOZADA's Audi vehicle. CD-1 entered the Audi vehicle and exchanged $300 in documented funds for approximately 68 grams of marijuana, which Co-Conspirator 1 removed from his person.

26.     During the transaction, Co-Conspirator 1 asked CD-1 if he was interested in purchasing cocaine and pulled out approximately one (1) ounce of cocaine. The purchased marijuana was later field tested by law enforcement and was positive for marijuana.

D.     Controlled Purchase of Cocaine from Co-Conspirator 1 on March 22, 2017

27.     On March 22, 2017, law enforcement coordinated the purchase of approximately 30 grams of cocaine from Co-Conspirator 1. During the operation, LOZADA went live from his Instagram Account. During the live feed, LOZADA was observed smoking marijuana, weighing marijuana on a digital scale, and then waving around a black pistol with a laser beam and a high-capacity magazine. LOZADA placed the firearm in his lap next to the digital scale while continuing to weigh marijuana.

E.     Search Warrant on LOZADA's Instagram Accounts on May 3, 2017

29.     LOZADA's social media accounts were preserved by law enforcement on December 13, 2016 and again on April 2, 2017. On May 3, 2017, the Honorable Ivan D. Davis, U.S. Magistrate Judge for the Eastern District of Virginia authorized a search warrant for LOZADA's Instagram accounts, "KUTTHROATANTT" and "STACKBOYANT." The below paragraphs detail some of the more relevant posts and videos from the account.

30.     On December 4, 2016, LOZADA posted his Snapchat account (the Subject Account) to his Instagram account so that others would be aware of his account name. Both the

7

Instagram Account and the Subject Account have been used in a similar manner to post pictures and videos indicative of the alleged crimes.

       *a.*    *Evidence of Anthony Lozada Distributing Controlled Substances*

31.     On December 2, 2016, LOZADA reported he "Got Zans too" (has Xanax for sale). LOZADA also reported he had "school buses" (yellow Xanax with time-release). The individual asked for the price and LOZADA asked, "How many was you tryn get?" The individual reported he wanted five of each pill.

32.     On December 10, 2016, LOZADA had a conversation regarding THC edibles (Rice Krispy Treats). LOZADA posted "DM (direct message) For Prices." In the direct messages, an individual stated, "Whatchu do for 100 in PAC n I need 4 bars." In my experience, this individual is asking what quantity of marijuana LOZADA would sell for $100 and asked for four Xanax bars (prescription pills). LOZADA responded he was out of bars. The individual then asked what he would provide in marijuana for $150 and LOZADA responded, 16 grams and provided the address to his residence at the time.

33.     On December 12, 2016, LOZADA posted a picture of yellow prescription pills consistent with Xanax with the text, "Buses." LOZADA also posted, "I got Zans and gummies on deck" (Xanax and THC edibles).

34.     On January 1, 2017, LOZADA messaged another user and stated, "Man I just got hit for all my shit. Feds pulled my man in my whip n got my shit." The user asked, "But dats wild, just pack? No guns or nun right?" LOZADA responded, "Dey took 4-5 bands, pack, lean, 1 dog" ($4,000-$5,000, marijuana, promethazine/codeine syrup and a firearm).

35.     On January 28, 2017, an individual messaged LOZADA, "Aye yo u got a dub I got bread," which in my experience is asking LOZADA for $20 of marijuana. The individual

then asks, "Aye bruh u got a egg." LOZADA instructs the individual to "Hit XXXXXX" (Co-Conspirator 2). The individual asks for her Instagram account and LOZADA provided "_snowbunny" an account known to be used by Co-Conspirator 2.

36.     On February 13, 2017, a user asked LOZADA, "Yo ant I need a big favor bro me an my peoples are in some shit and I really need some help can u throw me something so I can help my mom out I swear on my dead people I will pay u back an I cant smoke so u don't have tp worry about me smoking it I just need it to help out my mom I really don't like askin for hand outs but I need it [SIC]". LOZADA responded, "I'm still tryn get back my damn self. Ever since [Co-Conspirator 2] got locked my shit been short."

37.     On February 15, 2017, LOZADA posted pictures of THC edible gummies to his Instagram account. LOZADA reported each bag was 300 milligrams.

38.     On March 31, 2017, LOZADA posted a picture of marijuana with a location tag of "Williamstown, Dumfries" and text, "180/zip." Based on my training and experience, I know this to mean $180 per ounce of marijuana.

39.     On April 9, 2017, LOZADA reported he just lost all of his shit again. When the user he was communicating with asked what happened, LOZADA reported, "Was going to my Telly and I got pulled. Feds search my whip n found hp n 13 then had to pay my girl bond cause she took da charge for me."

        b.     *Evidence of Anthony Lozada's Possession of Firearms*

40.     On December 3, 2016, a photograph of LOZADA holding what appears to be a short-barrel rifle was posted to his Instagram account. The photograph had an ID: 1397259037200340908, which is unique to this photograph on Instagram. The photograph status reflects that the user deleted the photograph from Instagram.

9

41.     On December 13, 2016, LOZADA posted in a thread to a user, "I'm Coolin rn I got my daughter tryn figure sum out tryn get my choppa back from da Feds." In my experience, LOZADA is referring to the short-barrel rifle because a rifle is commonly referred to as a "choppa" and it was posted the day after this short-barrel rifle was seized by law enforcement.

42.     On February 7, 2017, a photograph was posted by LOZADA that depicted four firearms and a bag of marijuana. The firearms appear to be three Glock pistols, with one pistol with a laser attached. A fourth firearm appears to be an AR-style pistol sitting on a kitchen counter. Some of the firearms are consistent with firearms that CD-1 purchased for LOZADA. LOZADA posted, "Just Posted in Da Trap Wit Lil Bro."

F.     Law Enforcement Monitoring of Social Media Accounts

43.     Throughout this investigation, law enforcement monitored LOZADA's Instagram ("kutthroatantt") and the Subject Account, ("stackboyant") accounts via undercover law enforcement accounts. Many of the posts observed by law enforcement and described below were live feeds and not stored by the providers. During the entire time period, LOZADA continued to post about the distribution and use of controlled substances and firearms. These posts continued past the time when LOZADA turned 18 years old in June 2017. Described below are a few of the posts. Where possible, law enforcement recorded the videos. The dates listed reflect the date which law enforcement observed the information on social media and not necessarily the date that the information was posted to social media by the account user.

44.     On May 29, 2017, law enforcement observed a video posted to LOZADA's Instagram account of LOZADA smoking suspected marijuana. LOZADA also had a Glock pistol with an extended transparent magazine next to him.

10

45.   On June 10, 2017, law enforcement observed a video LOZADA posted to his Instagram account that showed him counting two bundles of U.S. currency and had two Glock pistols on his lap.

46.   On August 15, 2017, law enforcement observed a video posted by LOZADA to his Instagram account of himself smoking marijuana in a motor vehicle. At the same time, he was waving a black pistol with an extended magazine in his right hand. LOZADA then held a glass jar with marijuana in it. Continuing in the same video, LOZADA held two Glock pistols, one with an extended magazine and one without in his right hand.

47.   On August 27, 2017, law enforcement observed a video posted by LOZADA to his Instagram account of himself smoking marijuana. Later in the video, he is inside an apartment, sitting on a bed with a black pistol on the bed to his left side. His young child is then observed crawling on the same bed.

48.   On August 28, 2017, law enforcement observed a video posted by LOZADA to the Subject Account with a black pistol on a carpet while he can be seen counting U.S. currency. Later in the video, LOZADA is holding a black pistol and pointing it at the camera in his right hand.

49.   On September 4, 2017, law enforcement observed a video posted by LOZADA to the Subject Account of marijuana with a caption, "Woke Up Feelin Like Smoking A Wood & Knocking Tf Out." The video continued and it showed a heat-sealed vacuum bag open with a quantity of marijuana in it.

50.   On September 5, 2017, law enforcement observed a live video posted by LOZADA to his Instagram account of him smoking marijuana while waving a black pistol in his right hand.

11

51.     On the same date, law enforcement also observed a video posted to the Subject Account of LOZADA smoking marijuana and waving the same black pistol.  The video then transitions to an open bag of marijuana captioned with "Come Shop."

52.     It is apparent to investigators that LOZADA uses both the Subject Account and his Instagram account for similar illicit activities.

### Background on Snapchat

53.     Snapchat is a video messaging application by which users can take photos, record videos, add text and drawings, and send them to a controlled list of recipients, which was released as an Android app on October 29, 2012. These sent photographs and videos are known as "Snaps." Users may set a time limit for how long recipients can view their Snaps.  A user can also add the photo/video Snap to their "Story."  Depending on the user's privacy settings, the photos and videos added to a Story can be viewed by either all Snapchatters or just the user's friends for up to 24 hours.  Snapchat also has a messaging service.  A user can also type messages to friends within the Snapchat app using the Chat feature.  A user sends a Chat message to a friend, and once it is viewed by both parties — and both parties swipe away from the Chat screen — the message will be cleared.  Within the Snapchat app itself, a user can opt to save part of the Chat by tapping on the message (text or photo) that he or she wants to keep.

54.     Snapchat maintains basic subscriber information, including usernames, email addresses, phone numbers, account creation information, Internet Protocol addresses of account logins and logouts, logs of messages sent and received, including some metadata about the messages, and some message content.

55.     On September 5, 2017, I sent a preservation letter pursuant to Title 18, United States Code Section 2703(f) for all stored communications to Snapchat for the Subject Account.

12

I have reviewed the Snapchat guide for law enforcement, and know that Snapchat retains logs of messages sent and received, and they will provide the meta-data about the message pursuant to a search warrant. I also know that, according to Snapchat, "In certain limited circumstances it may be possible for us to retrieve the content of sent Snaps. The reason we often will not be able to retrieve Snap content is that we delete each Snap from our servers once all recipients have viewed it. And even when a Snap remains unopened, it will be deleted 30 days after it was sent." I know that Snapchat honors requests from law enforcement to preserve information in accordance with 18 U.S.C. § 2703(f). Upon receiving a preservation request on law enforcement department letterhead, Snapchat will preserve available account information associated with the username listed in the request in an offline file for up to 90 days and will extend the preservation for one additional 90-day period on a renewed request.

56.     Based on the information above, the computers of Snapchat are likely to contain all the material described above with respect to the Subject Account, including stored electronic communications and information concerning subscribers and their use of Snapchat, such as account access information, which would include information such as the IP addresses and devices used to access the account, as well as other account information that might be used to identify the actual user or users of the account at particular times.

## Information To Be Searched And Things To Be Seized

57.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular Title 18, United States Code, Sections 2703(a), (b)(1)(A), and (c)(1)(A), by using the warrant to require Snapchat to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B,

13

government-authorized persons will review that information to locate the items described in Section II of Attachment B.

### Conclusion

58.     Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities of violations, or attempted violations, of Title 18, United States Code, Section 924(c) (use and carry of a firearm during and in relation to a drug trafficking crime), Title 18, United States Code, 922(g)(3) (habitual user in possession of a firearm), Title 21, United States Code, Sections 841(a)(1) and 846 (conspiracy to distribute and possess with the intent to distribute marijuana and other controlled substances) may be located in the Subject Account described in Attachment A.

59.     This Court has jurisdiction to issue the requested warrant to Snapchat because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(1)(A). Specifically, the Court is a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

60.     Based on the forgoing, I request that the Court issue the proposed search warrant.

14

61.      Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not

required for the service or execution of this warrant.  Because the warrant will be served on

Snapchat, who will then compile the requested records at a time convenient to it, there exists

reasonable cause to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Michael A. Fernald
Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives

SUBSCRIBED and SWORN to before me on _OCTOBER 25_, 2017.

_____/s/___ JFA
John F. Anderson
United States Magistrate Judge
The Honorable John F. Anderson
United States Magistrate Judge

15

## ATTACHMENT A

### Place to Be Searched

This warrant applies to information associated with Snapchat user account "stackboyant" that is stored at premises owned, maintained, controlled, or operated by Snap Inc., a company headquartered at Snap Inc. Custodian of Records, 64 Market Street, Venice, California 90291.

**ATTACHMENT B**

**Particular Things to Be Seized**

I.    **Information to Be Disclosed by Snap Inc. (hereinafter the "Provider")**

1.    To the extent that information associated with Snapchat user account "**stackboyant**" (hereinafter the "Accounts") is within the possession, custody, or control of Provider, including any messages, records, files, logs, or information that have been deleted but are still available to the Provider or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on September 5, 2017, Provider is required to disclose the following information to the government from December 1, 2016 to the present:

a.    All records or information in the Accounts and maintained regarding the creation and use of the Accounts, including Basic Subscriber Information, Snapchat username, E-mail address, phone number, Snapchat Account Creation information, Timestamp and IP address logins and logouts, address books, contact lists, telephone numbers, Snaps, Stories, and Chats.

b.    The contents of all messages sent to and from the Accounts, including stored or preserved copies, drafts of messages, any deleted messages that are stored, the source and destination addresses associated with any messages, the date and time at which each message was sent, and the size and length of each message.

c.    All records or other information regarding the identification of the Accounts, to include full customer or subscriber name, customer or subscriber physical address, local and long distance connection records, telephone numbers, and other identifiers, records of session times and durations, the date on which the Accounts were created, the length of service, the IP address used to register the Accounts, log-in IP

addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number).

      d.      The types of service utilized.

      e.      All records pertaining to communications between Provider and any person regarding the Accounts, including contacts with support services and records of actions taken.

**II.**    **Information to Be Seized by the Government**

    2.    All information described above in Section I that constitutes evidence of violations of Title 18, United States Code, Section 924(c) (use and carry of a firearm during and in relation to a drug trafficking crime), Title 18, United States Code, 922(g)(3) (habitual user in possession of a firearm), Title 21, United States Code, Sections 841(a)(1) and 846 (conspiracy to distribute and possess with the intent to distribute marijuana and other controlled substances) pertaining to the following matters:

      a.      All records or information in the Accounts and maintained regarding the creation and use of the Accounts, including Basic Subscriber Information, Snapchat username, E-mail address, phone number, Snapchat Account Creation information, Timestamp and IP address logins and logouts, address books, contact lists, telephone numbers, Snaps, Stories, and Chats.

      b.      Messages, communications, records, and files associated with or attached to email messages, and transactional data that constitutes evidence of, that may have been

18

used to facilitate, and that were capable of being used to commit or further violations of the above-reference code sections, and to create, access, or store evidence of such crimes.

      c.     Information relating to who created, used, and communicated with the Accounts, including records about their identities and whereabouts.

      d.     Information indicating how and when the Accounts were accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the account owner(s).

      e.     Evidence indicating the Accounts owner's and user's state of mind as it relates to the crimes under investigation.

      f.     All records, documents, invoices, or materials associated with the Accounts that concern accounts with an Internet service provider or a telephone service provider whose services may have been used in the commission of the above-reference code sections and crimes.

19